| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>ROBERT A. VAN NEST - #84065<br>rvannest@keker.com<br>EUGENE M. PAIGE - #202849<br>epaige@keker.com<br>LAURIE CARR MIMS - #241584<br>lmims@keker.com<br>CODY S. HARRIS - #255302<br>charris@keker.com<br>ZAINAB O. RAMAHI - #332139<br>zramahi@keker.com<br>DANIEL B. TWOMEY - #341488<br>dtwomey@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:   415 391 5400<br>Facsimile:    415 397 7188 | CRAVATH, SWAINE & MOORE LLP<br>ANTONY L. RYAN (*pro hac vice*)<br>aryan@cravath.com<br>YONATAN EVEN (*pro hac vice*)<br>yeven@cravath.com<br>M. BRENT BYARS (*pro hac vice*)<br>mbyars@cravath.com<br>825 Eighth Avenue<br>New York, NY 10019<br>Telephone:  212 474 1000<br>Facsimile:  212 474 3700 |

Attorneys for
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SUBPOENAS ISSUED TO JEFFREY WILLIAMS AND BRUCE WATROUS JR. | Case No. 5:23-mc-80181-VKD<br><br>**DEFENDANTS' OPPOSITION TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S MOTION TO QUASH NON-PARTY SUBPOENAS**<br><br>**[REDACTED]** |

DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

    A.   The Court in the Securities Action denied Plaintiffs' blanket request to admit prior testimony ................................................................................. 3

    B.   Following the Court's order, Qualcomm assessed whether prior testimony could be used in the Securities Action on a case-by-case basis and compromised wherever possible. ............................................... 4

    C.   Qualcomm refused to agree to treat prior Apple witness testimony as if it was taken in the Securities Action because Qualcomm lacked a similar motive and opportunity to cross-examine Apple witnesses during the FTC Action. ............................................................................. 5

    D.   Qualcomm and Plaintiffs reached a compromise regarding Apple witnesses, and Plaintiffs assured the Court that the depositions could be completed by July 31. .............................................................................. 6

III. LEGAL STANDARDS ....................................................................................... 7

    A.   Motion to Transfer under Rule 45(f) ...................................................... 7

    B.   Motion to Quash ..................................................................................... 8

IV.  ARGUMENT ....................................................................................................... 9

    A.   The Court should transfer this motion to the Southern District of California. ............................................................................................... 9

    B.   Mr. Watrous possesses unique, first-hand, non-repetitive knowledge that is highly relevant to this case. ......................................................... 10

    C.   A short, targeted deposition will not unduly burden Mr. Watrous. ...... 13

V.   CONCLUSION .................................................................................................. 13

DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*3B Med., Inc. v. Resmed Corp.*,
  2016 WL 6818953 (S.D. Cal. Oct. 11, 2016) ........................................................ 7

*Apple Inc. v. Samsung Elecs. Co., Ltd*,
  282 F.R.D. 259 (N.D. Cal. Apr. 4, 2012) ...................................................... 8, 9, 12

*Castro v. United States*,
  2023 WL 3186285 (S.D. Cal. May 1, 2023) ......................................................... 8

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
  2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ....................................................... 11

*Chem-Aqua, Inc. v. NalcoCo.*,
  2014 WL 2645999 (N.D. Tex. June 13, 2014) ................................................... 10

*Ellena v. Standard Ins. Co.*,
  2013 WL 4520200 (N.D. Cal. Aug. 23, 2013) .................................................... 11

*Finisar Corp. v. Nistica, Inc.*,
  2015 WL 3988132 (N.D. Cal. June 30, 2015) ............................................. 8, 9, 12

*In re Google Litig.*,
  2011 WL 4985279 (N.D. Cal. Oct. 19, 2011) ....................................................... 9

*In re Google Play Store Antitr. Litig.*,
  No. 21-md-02981-JD (N.D. Cal. Aug. 15, 2022) ................................................. 8

*Groupion, LLC v. Groupon, Inc.*,
  2012 WL 359699 (N.D. Cal. Feb. 2, 2012) ........................................................ 11

*Life Techs. Corp. v. Illumina, Inc.*,
  2011 WL 13101728 (S.D. Cal. June 17, 2011) ........................................... 8, 9, 13

*Moon Mountain Farms, LLC v. Rural Comty. Ins. Co.*,
  301 F.R.D. 426 (N.D. Cal. Jul. 10, 2014) ..................................................... 1, 7, 9

*In re Qualcomm Litig.*,
  No. 3:17-cv-108-GPC-MDD, (Dec. 18, 2018) ............................................... 6, 13

*In re Qualcomm Securities Litigation*,
  No. 17-cv-121-JO (MSB) (S.D. Cal.) ........................................................... passim

*Rembrandt Diagnostics, LP, v. Innovacon, Inc.*,
  2018 WL 692259 (S.D. Cal. Feb. 2, 2018) ......................................................... 11

DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

*WebSideStory, Inc. v. NetRatings, Inc.*,
    2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) .......................................................................... 8

*Wultz v. Bank of China, Ltd.*,
    304 F.R.D. 38 (D.D.C. May 30, 2014) ............................................................................. 10

**Federal Rules**

Fed. R. Civ. P. 32 ........................................................................................................................ 1

Fed. R. Civ. P. 45 .................................................................................................................. *passim*

Fed. R. Evid. 804........................................................................................................................ 1

DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

## I.  INTRODUCTION[1]

Apple Inc., Jeffrey Williams, and Bruce Watrous Jr. (collectively, "Apple") have filed a motion to quash that presents an inaccurate version of the facts underlying this dispute. There is, however, no reason for this Court to untangle it all: Those facts (and this dispute) are inextricably intertwined with discovery issues and orders that are being monitored by the Court in *In re Qualcomm Securities Litigation*, No. 17-cv-121-JO (MSB) (S.D. Cal.) (the "Securities Action"). Indeed, both Judge Ohta and Magistrate Judge Berg have "already ruled on issues presented by the motion," and a further discovery conference has been set for August 28 to discuss these depositions. FED. R. CIV. P. 45, Adv. Comm. Note; ECF 296. Because the issuing Court is "manag[ing] the underlying litigation" and has greater "familiarity with the issues involved" here, this Court should transfer Apple's motion to the Southern District. *Moon Mountain Farms, LLC v. Rural Comty. Ins. Co.*, 301 F.R.D. 426, 429–30 (N.D. Cal. Jul. 10, 2014).

If this Court does consider Apple's motion, it should deny it. Qualcomm Inc. and the individual defendants named in the Securities Action (collectively, "Qualcomm") seek to depose a single Apple witness, Bruce Watrous, Jr., to elicit testimony rebutting testimony that Plaintiffs in the Securities Action intend to elicit from Apple COO Jeffrey Williams and former VP of Procurement Tony Blevins.[2] This dispute has arisen because Plaintiffs failed to take the Apple witnesses' depositions during fact discovery, opting instead to seek the wholesale introduction of *all* deposition transcripts taken in connection with *FTC v. Qualcomm Inc.* (the "FTC Action") as if they had been taken in the Securities Action. The Court denied that request, leaving Plaintiffs only the opportunity to seek admission of specific pieces of testimony on a case-by-case basis, to the extent such testimony meets the requirements of Federal Rule of Civil Procedure 32(a)(8) and Federal Rule of Evidence 804(b). Consistent with the Court's order, Qualcomm agreed that limited portions from four third-party depositions could be used in this case.

---

[1] In all quotations in this brief, all internal quotation marks, citations, brackets, and the like have been removed, and all emphases added, unless otherwise noted. All record cites are to the Securities Action, unless otherwise noted.

[2] This opposition concerns only Qualcomm's subpoena to Mr. Watrous. Qualcomm takes no position on Apple's request to quash Plaintiffs' subpoena to Mr. Williams.

1
DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

But Qualcomm objected to the use in this case of testimony from Apple witnesses because Qualcomm *lacked* a similar motive and opportunity to cross-examine those witnesses in the FTC Action with respect to the topics at issue in the Securities Action. For example, when Apple's witnesses were deposed in the FTC Action, Qualcomm lacked key documents showing that Apple's allegations regarding Qualcomm's conduct—allegations that figure prominently in Plaintiffs' complaint and in the regulatory actions that serve as the alleged "corrective disclosures" in the Securities Action— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Decl. of M. Brent Byars ("Byars Decl.") ¶¶ 4–6, Exs. 1–3. Moreover, since the prior depositions were taken, the Ninth Circuit and the European General Court both rejected the very antitrust claims against Qualcomm that were predicated in large part on Apple's allegations. Qualcomm never had an opportunity to confront Apple's witnesses with these documents, developments, and judicial findings, and such questioning will likely elicit evidence relevant to Plaintiffs' claims.

To nonetheless accommodate Plaintiffs' request to introduce testimony from Apple witnesses in the Securities Action, Qualcomm agreed to a compromise whereby each side could depose up to two Apple witnesses. At the Case Management Conference on May 30, 2023, Plaintiffs represented to the Court and to Qualcomm that they had held "preliminary conversations" with Apple's counsel and that, based on those discussions, Plaintiffs expected that Apple would make its witnesses available for deposition by the end of July. *Id.* ¶ 3. That expectation has turned out to be incorrect. Far from agreeing to make witnesses available within the timeframe Plaintiffs stated, Apple is now moving to quash the subpoenas served on Messrs. Williams and Watrous.

Qualcomm is open to ways to reduce any burden on Mr. Watrous. As Qualcomm's counsel told Apple's lawyers, Qualcomm believes that a deposition shorter than the full seven hours on the record could suffice, with Plaintiffs and Qualcomm sharing the time equally. Rather

than engage in efforts to compromise, Apple moved to quash. But Apple has failed to meet the heavy burden necessary to prevent Mr. Watrous's deposition from taking place entirely. Accordingly, if the Court declines to transfer this motion under Rule 45(f), it should deny the motion.

## II.  BACKGROUND

Apple wrongly claims that Qualcomm's subpoena seeks "to harass Apple, its former litigation opponent." Non-Parties Apple Inc., Jeffrey Williams, and Bruce Watrous Jr.'s Mot. to Quash Non-Party Subpoenas ("Mot."), 5:23-mc-80181-VKD, ECF 1 at 2. Not so. Apple is not foreign to the Securities Action; indeed, Apple cooperated and supported Plaintiffs in bringing their case. *See* Consol. Compl. ¶ 111 n.50, ECF 32 (alleging that "Apple and its counsel confirmed" the allegations that Plaintiffs relied on in drafting their own complaint). And it is Plaintiffs—not Qualcomm—who precipitated this dispute by seeking to introduce the at-issue testimony from Apple witnesses into the Securities Action. Qualcomm's position before Magistrate Judge Berg was that discovery is closed and that *no* depositions should occur. *See* ECF 285 at 4–7 ("Defendants should not be made to expend significant resources to prepare for and examine multiple deponents several months after the close of fact discovery, diverting resources from expert discovery and summary judgment proceedings."). To facilitate a compromise, however, Qualcomm agreed that—with the Court's permission—Plaintiffs could depose two Apple witnesses if Qualcomm could depose two Apple witnesses in *rebuttal*. Qualcomm now seeks only one rebuttal deposition. Qualcomm was and remains willing to forego such testimony altogether. But because Plaintiffs insist that Apple testimony is essential to their case, Qualcomm must have the opportunity to briefly depose Mr. Watrous in order to rebut the stale and incomplete testimony Apple witnesses provided in a different matter that had nothing to do with alleged securities violations.

### A.  The Court in the Securities Action denied Plaintiffs' blanket request to admit prior testimony.

This dispute is inextricably linked to a separate, related, and ongoing dispute regarding the use of prior deposition testimony in the Securities Action. Fact discovery in the Securities Action

3

1  closed on October 14, 2022. ECF 225. Six months before that, Plaintiffs filed a motion *in limine*
2  asking the Court to permit the use of all testimony taken in the FTC Action as if it had been taken
3  in this case or, in the alternative, grant a "six-month extension of the discovery schedule" to allow
4  for additional depositions. ECF 206-01 at 16. Qualcomm opposed that motion, and Plaintiffs
5  made no effort to depose any Apple witnesses before discovery closed.

6  On October 19, 2022, the Court announced its intention to deny Plaintiffs' motion *in
7  limine*. Far from determining, as Apple claims, "that the factual overlap between the cases
8  suggests that Qualcomm would have had the same motive and opportunity to cross-examine
9  witnesses in this matter as in the FTC Action," Mot. at 2, the Court in fact held that "there may be
10 instances where certain witnesses – you know, certain incentives might be different, given the
11 tenor and the crux of that case versus this case." ECF 276 at 53:3–12. The Court therefore
12 determined that the analysis must be performed "on a case-by-case basis" with respect to
13 particular deposition excerpts that Plaintiffs choose to offer into evidence at later stages of the
14 case. *Id.* at 52:20. The Court also denied Plaintiffs' alternative request to extend the discovery
15 deadline.

16 **B.  Following the Court's order, Qualcomm assessed whether prior testimony could be used in the Securities Action on a case-by-case basis and compromised wherever possible.**

18 The Court docketed an order confirming its tentative ruling on March 20, 2023. ECF 280.
19 On April 25, Plaintiffs requested (again) to reopen discovery, seeking to depose seven third-party
20 witnesses, including three from Apple. ECF 285. In an effort to avoid further litigation,
21 Qualcomm undertook the case-by-case analysis that the Court had ordered and stipulated that
22 certain portions of four transcripts from the FTC Action could be treated as if they were taken in
23 this case. Qualcomm objected to the designations from the depositions of the three Apple
24 witnesses (Mr. Williams, Mr. Blevins, and Aaron Schafer) that Plaintiffs sought.

25 Apple claims that Qualcomm agreed that the FTC Action testimony of "every Original
26 Equipment Manufacturer other than Apple could be used as if taken" in the Securities Action but
27 that is incorrect. Mot. at 2. In fact, Qualcomm agreed to only a limited subset of testimony from
28 four non-Apple OEM witnesses, leaving the rest to be litigated before trial. And although Apple

4

DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

claims that Qualcomm agreed to allow its own executives' prior testimony to come into evidence to "shield[] them from further deposition," that claim is also false. Mot. at 6. No fewer than 15 current and former Qualcomm executives have sat for deposition in this action, including Qualcomm's current and former CEOs, Presidents, and other high-level executives. And many of these witnesses had already sat for two days' worth of deposition in connection with the FTC and Apple Actions.[3] In addition, Qualcomm's agreement to allow the use of its executives' prior testimony was reasonable because Qualcomm can introduce its own employees' voluntary testimony if necessary. But Qualcomm can elicit necessary testimony from Apple only pursuant to the subpoena Apple now seeks to quash.

> **C.  Qualcomm refused to agree to treat prior Apple witness testimony as if it was taken in the Securities Action because Qualcomm lacked a similar motive and opportunity to cross-examine Apple witnesses during the FTC Action.**

As the Court in the Securities Action recognized when denying Plaintiffs' motion *in limine*, not all third-party testimony should be treated identically. Apple plays a unique role in the Securities Action that sets it apart from other OEMs. It appears from the face of Plaintiffs' complaint that Apple's counsel coordinated with Plaintiffs' counsel before the case was filed. *See* Consol. Compl. ¶ 111 n.50 (alleging that "Apple and its counsel confirmed" the allegations that Plaintiffs relied on in drafting their own complaint). Moreover, Apple's complaints about Qualcomm's conduct figure prominently in the regulatory actions launched against Qualcomm (by the FTC, the Korea Fair Trade Commission, and the European Commission), and those actions and Apple's lawsuit against Qualcomm serve as Plaintiffs' alleged "corrective disclosures." *See id.* at ¶¶ 210–24, 228. For its part, Qualcomm expressly and repeatedly warned investors that customers and others who use its patented inventions, such as Apple, might sue Qualcomm or take other steps to harm the company while seeking to avoid or reduce their own obligations to compensate Qualcomm for their use of its intellectual property.

Although Apple witnesses, including Mr. Watrous, had been deposed in the FTC and Apple Actions, Qualcomm lacked the ability to examine him on issues that are core to this case. It

---

[3] Discovery was coordinated in the FTC Action and the Apple Actions such that depositions taken in the former action were deemed to have been taken in the latter.

was only after Mr. Watrous's deposition had been completed that Judge Curiel, who oversaw Apple's civil action against Qualcomm in the Southern District of California, ruled that Apple had waived its privilege over ███████████████████████████████████ Qualcomm's business and that those documents had to be produced. *See In re Qualcomm Litig.*, No. 3:17-cv-108-GPC-MDD ("Apple Action"), ECF 746 (Dec. 18, 2018). ████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████ Because those documents came to light after fact discovery had concluded in the FTC Action and the Apple Action, Qualcomm had no ability to depose Mr. Watrous, or any Apple witness, about those internal Apple documents.[4] Qualcomm also obviously could not question Apple witnesses about what happened next: Apple's antitrust theories against Qualcomm ultimately failed on the merits, with both the Ninth Circuit and the European General Court rejecting them. Mr. Watrous, who helped mastermind Apple's scheme to harm Qualcomm ████████████████████, has never been deposed about those actions' failures.

### D. Qualcomm and Plaintiffs reached a compromise regarding Apple witnesses, and Plaintiffs assured the Court that the depositions could be completed by July 31.

Because treating Apple witnesses' testimony as if it had been taken in this case would unduly prejudice Qualcomm and lead to a misleading and incomplete record—one where Qualcomm had no ability to direct questions related to Plaintiffs' *securities* claims—Qualcomm refused to agree to treat the Apple deposition transcripts as if they had been taken in this action. At the Court's urging, Qualcomm negotiated a compromise with Plaintiffs. Ultimately, the parties agreed that Plaintiffs could first subpoena two Apple witnesses with Qualcomm subpoenaing up to two witnesses in rebuttal. At the May 30 CMC, Plaintiffs represented to the Court that they had

---

[4] Both Apple and Plaintiffs have long known that this information was material to this case. In March 2022, in cooperation with Plaintiffs and at their request, Apple agreed to produce in this case the many millions of documents that Apple had produced in the FTC and Apple Actions ***excluding only the few dozen documents that Judge Curiel's Order addressed***. Apple agreed to produce the remaining documents only after Defendants served a document subpoena to ensure Apple did not make a cherry-picked production of materials from those Actions. Byars Decl. ¶¶ 8–9.

held "preliminary conversations" with Apple's counsel, and that these depositions would be completed by July 31. Byars Decl. ¶ 3 . Neither Qualcomm nor the Court had reason to doubt that representation, and the Court ordered that the depositions could proceed as agreed but must be completed by July 31. ECF 296. The Court then set a discovery conference for August 28 to check on the status of the depositions. *Id.*

Plaintiffs later told Qualcomm that they intended to subpoena Jeffrey Williams and former Apple employee Tony Blevins. Qualcomm responded that it would depose only one Apple witness, Mr. Watrous, in rebuttal. Based on Plaintiffs' prior representation, Qualcomm's counsel reached out to Apple's counsel to discuss scheduling, only to learn that, according to Apple's counsel, they had never told Plaintiffs that Apple was willing to schedule these depositions in July (or ever). Qualcomm explained to Apple's counsel that the depositions were necessary because Plaintiffs were insisting upon seeking to admit previous Apple testimony and had failed to take these depositions during fact discovery. Apple thereafter filed this motion.

## III. LEGAL STANDARDS

### A. Motion to Transfer under Rule 45(f)

Federal Rule of Civil Procedure 45(f) provides that where, as here, the court hearing a motion to quash a subpoena did not issue the subpoena, it may transfer the motion "to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." FED. R. CIV. P. 45(f). When considering whether exceptional circumstances are present, courts weigh whether transferring the motion would "avoid disrupting the issuing court's management of the underlying litigation" against the "interests of the nonparty served with the subpoena in obtaining local resolution of the motion." FED. R. CIV. P. 45, Advisory Committee Notes on 2013 Amendments.

In weighing these factors, courts routinely transfer motions "[w]hen the issuing court has already ruled on issues presented by" the motion, *Moon Mountain Farms*, 301 F.R.D. at 429 (listing cases), or when the issuing court "is in a better position to rule on [the] motion[] based on its familiarity with the issues involved*." 3B Med., Inc. v. Resmed Corp.*, 2016 WL 6818953 (S.D. Cal. Oct. 11, 2016).

7

### B. Motion to Quash

As the party seeking "to prevent a deposition," Apple must carry "a heavy burden." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. Apr. 4, 2012). That standard applies with equal measure to third parties, including those seeking to thwart a so-called apex deposition. *See, e.g.*, *Life Techs. Corp. v. Illumina, Inc.*, 2011 WL 13101728, at *2 (S.D. Cal. June 17, 2011) (granting motion to compel third party CEO deposition); *Castro v. United States*, 2023 WL 3186285, at *2 (S.D. Cal. May 1, 2023) (relying on "heavy burden" standard to compel a third-party deposition).[5] Given that stringent standard, "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Apple*, 282 F.R.D. at 263.

A witness's status as a high-level executive in no way immunizes that executive from deposition: "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007); *see also In re Google Play Store Antitr. Litig.*, No. 21-md-02981-JD, ECF 321 (N.D. Cal. Aug. 15, 2022) (holding that because the non-party CFO was "likely to have information that is relevant and material to the case," his senior role was "not grounds for suppressing his deposition").

When considering whether to allow a so-called "apex deposition," courts determine "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple*, 282 F.R.D. at 263. To satisfy the first factor, "the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information." *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015). Instead, "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *Id.* With respect to the second factor, "there is no strict requirement that a party exhaust every type of discovery request" before seeking a deposition. *Id.*

---

[5] Qualcomm does not concede that Mr. Watrous is an "apex" witness. As explained below, he is two levels removed from Apple's leadership. *See infra*, Part IV.B.

at *3. And, importantly, "[e]ven when the apex doctrine is at issue, . . . the burden remains on the party seeking to avoid the deposition." *Id.* at *2.

Because the standard favors discovery, courts routinely grant requests to depose high-level executives. Apple itself compelled the deposition of Samsung's CEO and several of its Vice Presidents. *See Apple*, 282 F.R.D. at 264–69; *see also, e.g., In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (allowing deposition of Google's CEO). The same holds true for third-party executives facing a subpoena, including CEOs. *See Life Techs. Corp.*, 2011 WL 13101728, at *1.

## IV.  ARGUMENT

This Court need not grapple with the substantive questions presented here; Apple's motion should be heard in the Southern District of California. But if the Court does consider the motion, it should deny it because Apple has failed to meet the heavy burden needed to quash Mr. Watrous's deposition in its entirety.

### A.  The Court should transfer this motion to the Southern District of California.

Apple's motion presents a textbook example of "exceptional circumstances" warranting a transfer. FED. R. CIV. P. 45(f). Apple seeks to quash the parties' compromise of a lengthy discovery dispute spanning numerous discovery letters, motions, and hearings. Magistrate Judge Berg already approved of the parties' compromise, ordering that the Apple depositions occur before July 31. *See Moon Mountain Farms*, 301 F.R.D. at 429 (granting motion to transfer when the issuing court "already ruled on issues presented by the motion"). That Court is actively monitoring the situation and has scheduled an August 28 discovery conference to check on the status of these depositions. ECF 296. Transferring the motion would therefore "avoid disrupting the issuing Court's management of the underlying litigation." FED. R. CIV. P. 45, Advisory Committee Notes on 2013 Amendments.

Moreover, Apple's motion pertains to just one sliver of the parties' overall dispute, which concerns Plaintiffs' request to use all third-party testimony from the FTC Action in the Securities Action. Qualcomm opposed that request, and Judge Ohta denied Plaintiffs' motion *in limine* on that issue. These depositions arise in connection with that ongoing dispute, and this motion's

9

DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479

disposition may affect how Judge Ohta views or rules on Plaintiffs' improper attempts to introduce Apple witnesses' previous testimony into their case. Those questions are not before this Court. Thus, it cannot seriously be disputed that the issuing court not only has more familiarity with the overall litigation that—as this Court points out—"has been pending for several years," *In re Subpoenas*, 23-mc-80181-VKD, ECF 6, but is also "in a better position to rule on [the motion] due to [its] familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 43 (D.D.C. May 30, 2014).

Qualcomm has repeatedly asked Apple to consent to transferring the motion, but Apple has refused to do so, instead using Qualcomm's request as an effort to learn about Qualcomm's deposition strategy, if Mr. Watrous's deposition takes place. Byars Decl. ¶ 7, Ex. 4. Despite its refusal, Apple has identified no persuasive reason why it would be more sensible or efficient to litigate this motion here rather than in the Southern District of California. *Id.* Apple would face no increased burden in arguing its motion before the issuing Court. In fact, Apple's prior counsel noticed an appearance in the Securities Action three years ago. ECF 140. And Apple's new counsel need not seek separate admission in the Southern District to litigate their motion there. *See* FED. R. CIV. P. 45(f) (authorizing a third-party's attorney "to appear on the motion as an officer of the issuing court" after a transfer). Nor would Apple's attorneys need to travel to San Diego to litigate the motion. Subpoenaed parties "may be allowed to make a telephonic appearance at any hearing in California." *Chem-Aqua, Inc. v. NalcoCo.*, 2014 WL 2645999, at *3–4 (N.D. Tex. June 13, 2014) (granting transfer motion).

In sum, this Court should transfer Apple's motion to quash to the Southern District of California where Magistrate Judge Berg, and Judge Ohta if necessary, can consider the arguments and their effect on the overall litigation.

**B.  Mr. Watrous possesses unique, first-hand, non-repetitive knowledge that is highly relevant to this case.**

If this Court declines to transfer this motion to the Southern District of California, it should deny the motion on the merits. Mr. Watrous possesses unique, first-hand information that

is relevant to Qualcomm's defenses and about which no Apple witness has yet provided deposition testimony.

To begin with, it is far from certain that Mr. Watrous qualifies as a so-called "apex" witness. He is not Apple's president or CEO. Nor is he Apple's General Counsel or one of the Senior Vice Presidents whom Apple identifies as its "Apple Leadership" team.[6] He is instead one of four lower-level vice presidents who reports to the Senior Vice President and General Counsel, who, in turn, reports to the CEO. Apple has identified no authority holding that such an individual is an "apex" witness who should be afforded special solicitude or a heightened protection from a routine third-party subpoena. Indeed, Apple's own cited case law makes clear that the "apex" doctrine applies to "an official *at the highest level* or 'apex' of corporate management." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (considering motion regarding company's "top two executives").[7] In short, "apex" means top. Mr. Watrous may be a senior employee, but he is two levels removed from Apple's pinnacle.

But even if the standard to depose apex witnesses applies, Qualcomm would meet it. In the Securities Action, Plaintiffs allege that Qualcomm failed to disclose to investors so-called "bundling" practices that supposedly heightened the risk that Qualcomm would face antitrust scrutiny or litigation. Plaintiffs allege that the fraud was revealed to the market through "corrective disclosures" that took the form of regulatory actions by the Korea Fair Trade Commission, the European Commission, the FTC, and a lawsuit that Apple filed. For its part, Qualcomm repeatedly warned investors that it could face antitrust scrutiny from regulators and lawsuits from companies, such as Apple, who wished to "mitigate and/or eliminate their need to pay royalties" to Qualcomm. Decl. of Yonatan Even, Ex. 21 at A688, ECF 245-21.

---

[6] *See* https://www.apple.com/leadership/ (last visited July 17, 2023).

[7] None of the cases Apple cites suggests that a vice president in Mr. Watrous's position is an apex witness. *See Rembrandt Diagnostics, LP, v. Innovacon, Inc.*, 2018 WL 692259 (S.D. Cal. Feb. 2, 2018) (company's Global President); *Celerity*, 2007 WL 205067, at *2 (company's President, CEO, and COO as well as Executive Chairman of the Board); *Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *1–2 (N.D. Cal. Aug. 23, 2013) (vice president who reports directly to the CEO and who had "declared that he has no knowledge about the information" at issue); *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *1 (N.D. Cal. Feb. 2, 2012) (CEO, Chairman, and four Senior Vice Presidents).

According to Apple, Mr. Watrous "oversees Apple's legal team worldwide" and is "responsible for corporate law, . . . commercial law . . . [and] international law," among other things. Mot. at 9. That explains why ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████

To be sure, Mr. Watrous provided testimony in the FTC Action regarding Apple's view of its contractual relationship with Qualcomm. But ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Mr. Watrous drafted, authorized, received, discussed, or would have reviewed those documents, and as head of Apple's legal team, has "unique, first-hand, non-repetitive knowledge" about them.[8] *Apple*, 282 F.R.D. at 263. And as the executive who "oversees Apple's legal team worldwide," Mot. at 9, Mr. Watrous could provide testimony regarding the outcome of the antitrust actions ████████████████. Qualcomm obviously could not question Mr. Watrous about Qualcomm's vindication in those actions, which had not yet occurred. Nor has Mr. Watrous faced questions regarding Apple's role, if any, in assisting Plaintiffs with prosecuting the Securities Action. Qualcomm has therefore "made a plausible showing that Mr. [Watrous] may have first-hand knowledge of relevant matters as a percipient witness," which is all that is required to secure his testimony. *Finisar Corp.*, 2015 WL 3988132, at *3.

Contrary to Apple's argument, this is hardly "marginal additional information" that fails to justify a deposition. Mot. at 11. Rather, these issues and documents are new and highly relevant to the claims and defenses in this action. There was no fraud here. Qualcomm in no way knowingly courted antitrust risk and hid it from investors, as Plaintiffs claim. ████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████

---

[8] None of these documents or areas of questioning could come as a surprise to Apple. Indeed, Apple cooperated with Plaintiffs to prevent production of these documents in this action, forcing Qualcomm to issue a separate subpoena to Apple before Apple would produce them. *See* Byars Decl. ¶¶ 8–9 .

▇▇▇▇▇▇▇▇▇▇▇▇▇ If Plaintiffs persist in seeking to use prior Apple witnesses' testimony regarding Qualcomm's allegedly fraudulent conduct in this lawsuit, then Qualcomm must be afforded the opportunity to develop an appropriate record directed to that specific claim. Otherwise, the Court and the jury will be left with an incomplete and misleading record on issues that go to the heart of this case.

### C. A short, targeted deposition will not unduly burden Mr. Watrous.

Apple's motion repeatedly states that a deposition would "burden" and "harass" Mr. Watrous but is notably short on why that could possibly be the case. Qualcomm will hold the deposition at a location convenient for Mr. Watrous, and as Qualcomm told Apple's counsel, Qualcomm is willing to shorten the length of the deposition, subject only to Judge Berg's order that questioning time will be split evenly between Plaintiffs and Qualcomm.

Apple asserts in passing that deposing Mr. Watrous would "implicate[] significant privilege concerns." Mot. at 11. But Judge Curiel already held that Apple waived any privilege (to the extent that there was any) over many of the internal Apple documents that Defendants would use to examine Mr. Watrous. And the outcome of the litigation and regulatory events Defendants intend to question him about are not privileged. In any event, in Apple's own litigation against Qualcomm, Apple named Mr. Watrous as a trial witness concerning Apple's relationship with Qualcomm, showing that Apple is able and willing to navigate any privilege concerns that may arise in connection with his testimony. *See* Apple Action, ECF 1142 at 162.

There are no less intrusive means available to obtain the necessary discovery. Simply admitting the prior testimony, as Apple suggests, in no way solves the problem—indeed, that is the very problem that the deposition is designed to address. Mr. Watrous has unique, first-hand information that only he can provide. A short, targeted deposition is by far "the most efficient method of discovery." *Life Techs. Corp.*, 2011 WL 13101723, at *2.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Apple's motion to quash with respect to Mr. Watrous.

////

| | | |
|---|---|---|
| Dated: | July 21, 2023 | KEKER, VAN NEST & PETERS LLP |

By: *s/Robert A. Van Nest*
ROBERT A. VAN NEST
EUGENE M. PAIGE
LAURIE CARR MIMS
CODY S. HARRIS
ZAINAB O. RAMAHI
DANIEL B. TWOMEY

ANTONY L. RYAN
YONATAN EVEN
M. BRENT BYARS
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000
Fax: (212) 474-3700
yeven@cravath.com
aryan@cravath.com
mbyars@cravath.com

14
DEFS.' OPP. TO NON-PARTIES APPLE INC., JEFFREY WILLIAMS, AND BRUCE WATROUS JR.'S
MOT. TO QUASH NON-PARTY SUBPOENAS
Case No. 5:23-MC-80181-VKD

2318479